# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

JIMMY THOMAS GLASS,

                  Petitioner,

v.

WARDEN TIM WENGLER,

                  Respondent.

Case No. 1:12-cv-00380-EJL

**MEMORANDUM DECISION AND ORDER**

Pending before the Court in this habeas corpus matter is Respondent's Motion for Partial Summary Dismissal (Dkt. 6). Petitioner Jimmy Thomas Glass has responded to the Motion (Dkt. 9), and Respondent has filed a reply (Dkt. 10). The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondent on March 14, 2013. *See* Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court shall decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters

**MEMORANDUM DECISION AND ORDER  1**

the following Order granting the Motion for Partial Summary Dismissal and dismissing with prejudice Claims One, Two, and Four of the Petition.

## FACTUAL BACKGROUND

Petitioner was convicted in October 2004 of enticing a child over the Internet. (State's Lodging A-1 at 72.) The facts relating to Petitioner's crime are set forth in the decision of the Idaho Court of Appeals in Petitioner's direct appeal:

> During the week of July 15, 2004, detectives from the Ada County Sheriff's Office conducted an Internet sting operation to locate individuals enticing children into sexual activity over the Internet. Two officers posing as children under the age of sixteen were online at the same time for approximately eight hours a day. One day, Detective Kenneth Smith logged into a Yahoo . . . chat room labeled "romance" and posed as a fifteen-year-old girl with the screen name "lisa200215ncal." The user profile for that screen name identified "Lisa" as a high school sophomore from California who was currently in Boise visiting her father.

> After Detective Smith logged into the chat room, other individuals already signed into the same chat room were able to see Detective Smith's screen name and profile and were able to send private "instant messages" directly to him. Subsequently, he was privately contacted by a person using the screen name "letsgetkinky831." During an ensuing conversation, "lisa200215ncal" indicated that she was a fifteen-year-old female to which "letsgetkinky831" replied, "That's cool." He then asked her to look at the picture on his profile, that of a man from the waist down, naked and masturbating, and to tell him if it was "ok." The following conversation then took place:

> | Lisa200215ncal: | yea looks ok |
> |---|---|
> | Letsgetkinky831: | :D [laughter] |
> | Letsgetkinky831: | maybe you'd let me undress in front of you? |
> | Lisa200215ncal: | maybe |
> | Letsgetkinky831: | well what do you have in mind then? |
> | Lisa200215ncal: | I don't know didn't really have a plan |
> | Letsgetkinky831: | well then let me start by coming over and |

|                   |                                              |
|-------------------|----------------------------------------------|
|                   | taking my clothes off                        |
| Letsgetkinky831:  | play with it in front of you, get it hard    |
| Letsgetkinky831:  | see what comes up?                           |
| Lisa200215ncal:   | yea might be able to do that                 |
| Letsgetkinky831:  | cool                                         |
| Letsgetkinky831:  | when?                                        |
| Letsgetkinky831:  | Lisa?                                        |
| Letsgetkinky831:  | what's wrong now?                            |
| Lisa200215ncal:   | think                                        |
| Letsgetkinky831:  | ok                                           |
| Lisa200215ncal:   | so ur serious                                |
| Letsgetkinky831:  | i'm dead serious                             |
| Letsgetkinky831:  | i'll undress, if you don't like, I'll leave, k |
| Lisa200215ncal:   | well how far do u want to go                 |
| Letsgetkinky831:  | only as far as you want to go                |
| Lisa200215ncal:   | so if I said no sex u would be good with that |
| Letsgetkinky831:  | yes                                          |
| Letsgetkinky831:  | cool then?                                   |

. . . .

|                   |                                              |
|-------------------|----------------------------------------------|
| Letsgetkinky831:  | i need to go to work today                   |
| Lisa200215ncal:   | when                                         |
| Letsgetkinky831:  | at 2                                         |
| Letsgetkinky831:  | so I'd have to do this soon                  |
| Lisa200215ncal:   | oh so will that be enough time               |
| Letsgetkinky831:  | sure will if ya let me come over now         |
| Letsgetkinky831:  | :D                                           |
| Lisa200215ncal:   | what part of town do you live in             |
| Letsgetkinky831:  | north side U?                                |
| Lisa200215ncal:   | well im not really sure do u know where Fairview is |
| Letsgetkinky831:  | i do                                         |
| Lisa200215ncal:   | ok                                           |
| Letsgetkinky831:  | what's the address then?                     |
| Lisa200215ncal:   | [address given]                              |
| Letsgetkinky831:  | ok                                           |
| Letsgetkinky831:  | so it's cool then?                           |
| Lisa200215ncal:   | what is ur first name                        |
| Letsgetkinky831:  | Tom                                          |

**MEMORANDUM DECISION AND ORDER  3**

| Lisa200215ncal: | I will look for u what does ur car look like |
| Letsgetkinky831: | blk car |
| Lisa200215ncal: | small or big (the car) |
| Letsgetkinky831: | lol small 2 dorr |
| Letsgetkinky831: | door |
| Lisa200215ncal: | ok well see u in a bit do you have a condom |
| Letsgetkinky831: | I don't but thought you didn't want sex |
| Lisa200215ncal: | well bring one just in case u never no |
| Letsgetkinky831: | k |

Twenty-three minutes after the conversation ended, another detective in the apartment observed a black two-door car pulling into the apartment parking lot. The detectives then lost sight of the car, but shortly thereafter, Glass knocked on the apartment door where the sting was taking place. He was placed under arrest.

(State's Lodging B-4 at 1-3 (alterations in original).

Police later seized a Micron laptop computer from Petitioner's workplace. At Petitioner's preliminary hearing, a computer forensics investigator testified that he had begun a preliminary examination of the laptop and that he had found some evidence of the username "letsgetkinky831" on the computer. (State's Lodging C-1 at 47-48.) At trial, however, the prosecution did not call this investigator. In fact, the prosecution did not introduce any evidence from any computer. (*See* State's Lodging E-1 at 252.) Rather, the state's case rested on circumstantial evidence that Petitioner was "letsgetkinky831": (1) there could only be one person using the name "letsgetkinky831" the day of the chat because screen names on Yahoo! chat rooms are unique; (2) "letsgetkinky831" told "lisa200215ncal" that he was leaving to go to her apartment "now" and that he would arrive in a small, 2-door black car; (3) 23 minutes later, a small, 2-door black car turned

**MEMORANDUM DECISION AND ORDER  4**

into the parking lot of the vacant apartment being used in the sting operation; and (4) shortly thereafter, Petitioner knocked on the door to the apartment. (*See* State's Lodging A-2 at 14-20; A-4 at 20-25, 42-43.)

The jury found Petitioner guilty, and he was sentenced to 15 years in prison with 3 years fixed. On Petitioner's motion for reduction of sentence under Idaho Rule of Criminal Procedure 35, the court reduced the fixed term of the sentence to 2 years. (State's Lodging A-1 at 88, D-3 at 2; Dkt. 1 at 1.)

## PROCEDURAL BACKGROUND

### 1.    Direct Appeal

Petitioner appealed his conviction, arguing that (1) the state failed to lay an adequate foundation at trial to prove that Petitioner was, in fact, "letsgetkinky831," rendering the conversation between "letsgetkinky831" and "lisa200215ncal" inadmissible hearsay (State's Lodging B-1 at 8-10); (2) the trial court abused its discretion in allowing a detective to testify about the uniqueness of Yahoo! screen names because there was insufficient foundation that the detective was qualified as an expert on these issues (*id*. at 11-14); and (3) there was insufficient evidence that Petitioner solicited "lisa200215ncal" to participate in a "sexual act," as required by the statute of conviction (*id*. at 15-20). The Idaho Court of Appeals affirmed Petitioner's conviction, and the Idaho Supreme Court denied his petition for review. (State's Lodging B-4, B-7.)

## 2.    First Postconviction Petition

Petitioner then filed a petition for postconviction relief in the state district court. He asserted the following seven claims: (1) the prosecution committed a *Brady*[1] violation by withholding from the defense the Micron laptop that police had seized from Petitioner's workplace and that may have contained evidence of the "letsgetkinky831" screen name (State's Lodging C-1 at 11-12); (2) the prosecution committed a *Brady* violation by failing to disclose to the defense its intent to rely at trial on a detective as an expert witness regarding the uniqueness of screen names (*id*. at 13-14); (3) the prosecution knowingly elicited perjured testimony (*id*. at 14-15); (4) other instances of prosecutorial misconduct (*id*. at 15-17); (5) trial counsel was ineffective in failing to obtain and examine the Micron laptop seized by police and in failing to procure an expert witness regarding the computer or to investigate a potential witness who supposedly saw Petitioner working on that laptop during the chat (*id*. at 17-19); (6) trial counsel was ineffective for failing to inform Petitioner that he had a right to refuse to participate in a psychosexual evaluation used against Petitioner at sentencing, a principle later confirmed by the Idaho Supreme Court in the *Estrada* case[2] (*id.* at 19-20); and (7) appellate counsel was ineffective for failing to raise on appeal an argument that trial counsel was ineffective (*id*. at 21).

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

[2] *Estrada v. State*, 149 P.3d 833 (Idaho 2006).

**MEMORANDUM DECISION AND ORDER  6**

The state district court appointed counsel for Petitioner and later granted the state's motion for summary dismissal with respect to the first five claims. (*Id.* at 170, 189-98.) Petitioner agreed to the dismissal of his claim of ineffective assistance of appellate counsel. (*Id*. at 199.) After the state conceded that Petitioner's *Estrada* claim was valid, Petitioner received a new sentencing hearing before a different judge. (State's Lodging D-3 at 2; C-1 at 210.) Petitioner was re-sentenced to a 15-year prison term with 3 years fixed. (State's Lodging E-1 at 4.)

Petitioner appealed the summary dismissal of his state postconviction petition, but only with respect to two of the seven claims: his claim that the prosecution violated *Brady* by withholding the Micron laptop and his claim of prosecutorial misconduct. (State's Lodging D-1 at 9-13.) He did not appeal the dismissal of his claim of ineffective assistance of trial counsel, nor did he raise any *Brady* claim other than that involving the laptop. The Idaho Court of Appeals affirmed, and the Idaho Supreme Court denied Petitioner's petition for review. (State's Lodging D-3 & D-6.)

### 3.     Successive Postconviction Petition

Petitioner next filed a pro se successive petition for state postconviction relief. Petitioner re-asserted his *Brady* claim regarding the laptop computer, his claim of prosecutorial misconduct (particularly involving the alleged withholding of the laptop), and his claim that his trial counsel was ineffective in failing to obtain and examine the laptop. (State's Lodging E-1 at 32-42, 248-49.) Petitioner argued that counsel should have investigated a potential witness, Kathy Grover, who Petitioner claimed could have

**MEMORANDUM DECISION AND ORDER  7**

testified that he was working Micron laptop at the time of the chat; if the laptop was not used in the chat, the argument went, then Ms. Grover's testimony would have shown that Petitioner could not have been "letsgetkinky831." (State's Lodging C-1 at 18; E-1 at 18.)

Petitioner also raised four new claims. First, he argued that a Yahoo! Terms of Service Agreement and Yahoo! Registration page constituted newly discovered evidence, which would have provided Petitioner with a valid entrapment defense, and that the prosecution wrongfully withheld that evidence.[3] (*Id*. at 6-7, 20-22, 42, 249.) Second, he argued that the prosecution should have notified him before it released the laptop to Petitioner's former employer without retaining a copy of the hard drive, despite a court order to preserve that evidence. (*Id*. at 7-8, 249.) Third, Petitioner claimed that his *postconviction* counsel was ineffective for failing to take possession of the Micron laptop and have it examined prior to its release. (*Id*. at 9, 249.) Finally, in response to the state's motion for summary dismissal of the successive postconviction petition, Petitioner claimed that "there was no connection between him and the chat log transcript." (*Id*. at 249.)

Because Idaho law places strict limitations on successive postconviction petitions, Petitioner argued that his postconviction counsel was ineffective for failing to adequately present Petitioner's claims in the initial petition. (*Id*. at 15.) Therefore, Petitioner asserted, there was "sufficient reason" why the claims in his successive postconviction petition

---

[3] Newly discovered evidence claims are governed by Idaho Code § 19-4901(a)(4), which allows a petitioner to apply for postconviction relief if "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice."

**MEMORANDUM DECISION AND ORDER 8**

should not be barred by Idaho Code § 19-4908, which generally allows for only one

postconviction petition.[4] *(Id.* at 12-19.)

The state district court summarily dismissed Petitioner's successive postconviction

petition. The court held that Petitioner's *Brady* claim regarding the computer had been

adequately raised in his initial postconviction petition. (State's Lodging E-1 at 251.) With

respect to Petitioner's claims of various instances of prosecutorial misconduct, the court

concluded that Petitioner either (1) had adequately raised the claims in his initial petition,

or (2) failed to explain why the claims had not been raised in the initial petition. (*Id.* at

251-52.)

As for Petitioner's claim that trial counsel was ineffective for failing to obtain and

examine the laptop, the court reasoned: "The state at trial never claimed this computer

was used for the chat. The court fails to see how a forensic analysis would make a

difference in this case. [Petitioner] provides no basis for believing it would, other than to

say it could have exculpatory evidence on it." (*Id.* at 252.) The court apparently construed

Petitioner's claim regarding the Yahoo! Terms of Service Agreement and Yahoo!

---

[4]  That statute provides as follows:

> All grounds for relief available to an applicant under this act must be raised in his
> original, supplemental or amended application. Any ground finally adjudicated or not so
> raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted
> in the conviction or sentence or in any other proceeding the applicant has taken to secure
> relief may not be the basis for a subsequent application, *unless the court finds a ground
> for relief asserted which for sufficient reason was not asserted or was inadequately
> raised* in the original, supplemental, or amended application.

Idaho Code § 19-4908 (emphasis added).

**MEMORANDUM DECISION AND ORDER  9**

Registration Page as a *Brady* claim, rather than a newly discovered evidence claim, and found no evidence that the prosecution had this evidence before trial; in addition, any "violation of the agreement in and of itself would not give [Petitioner] an entrapment defense." (*Id*.)

The state district court also dismissed Petitioner's claim that he should have been notified of the laptop's release, finding that the prosecution originally thought the police had retained the laptop but later learned that it had been released. The court also held that there was no reason to believe that the prosecution withheld exculpatory evidence and that Petitioner "had two years following his conviction to have the computer analyzed if he believed it appropriate to do so." (*Id*. at 253).

Petitioner appealed the dismissal of four of the claims in his successive postconviction petition: (1) his *Brady* claim regarding the laptop; (2) his ineffective assistance of trial counsel claim; (3) his prosecutorial misconduct claim; and (4) his claim regarding the Yahoo! Terms of Service Agreement and Yahoo! Registration Page. (State's Lodging F-1 at 9.)[5] With respect to the first three claims, Petitioner argued that

---

[5] Although the trial court evidently considered the Yahoo! evidence claim as a *Brady* claim, Petitioner presented it on appeal as a newly discovered evidence claim under Idaho Code § 19-4901(a)(4), contending that the court abused its discretion in dismissing that claim. (State's Lodging F-1 at 9.) Petitioner did cite *Brady* in the body of his argument on this claim (*id*. at 30-31), but his appellate briefing focused squarely on the four-part test for a newly discovered evidence claim: "(1) that the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that failure to learn of the evidence was due in no part to lack of diligence on the part of the defendant." *Whiteley v. State*, 955 P.2d 1102, 1105 (Idaho 1998) (quoting *State v. Drapeau*, 551 P.2d 972, 978) (Idaho 1976)). (*See* State's Lodging F-1 at 28-35.)

**MEMORANDUM DECISION AND ORDER  10**

his initial postconviction counsel did not adequately raise those claims in his initial

petition.

The Idaho Court of Appeals discussed at length the requirements for a successive

postconviction petition. (State's Lodging F-3 at 3-4.) The appellate court explained:

> Where, as here, a petitioner alleges ineffective assistance of
> post-conviction counsel as a basis for bringing a successive
> petition, the relevant inquiry is "whether the second petition
> has raised *not merely a question of [postconviction] counsel's
> performance but substantive grounds for relief* from the
> conviction and sentence." *Nguyen v. State*, 126 Idaho [494],
> 496, 887 P.2d 39, 41 (Ct. App. 1994) (quoting *Wolfe v. State*,
> 113 Idaho 337, 339, 743 P.2d 990, 992 (Ct. App. 1987)).
> Thus, to overcome summary dismissal, [Petitioner] was
> required to allege facts which, if true, showed both (1) that the
> claims alleged in his successive postconviction petition were
> either not raised or inadequately raised in his original post-
> conviction action due to the ineffective assistance of his
> original post-conviction counsel, and (2) a valid underlying
> claim of post-conviction relief.

(*Id.* at 4) (emphasis added) (original alterations omitted).

The court of appeals determined that Petitioner had not met his burden of showing

sufficient reason why the claims in the successive petition were not barred by Idaho Code

§ 19-4908. With respect to the *Brady* claim that the prosecution withheld the computer,

the court upheld the district court's conclusion that the claim had been adequately raised.

Additionally, Petitioner could not establish a *Brady* violation because he "provided only

implicit inferences and speculation that the results of forensic testing of his work laptop

computer would be exculpatory." (*Id.* at 5.) The court thus determined Petitioner had

**MEMORANDUM DECISION AND ORDER  11**

neither shown ineffectiveness of postconviction counsel nor a valid, substantive ground for postconviction relief.

Addressing the prosecutorial misconduct claim, the court agreed with the district court that the claim was adequately raised in Petitioner's initial postconviction proceeding. (*Id.* at 6.) The court also held that "because [Petitioner] is unable to establish a *Brady* violation, he is unable to establish a prosecutorial misconduct claim in relation to his *Brady* claim." (*Id.*) The appellate court came to a similar conclusion with respect to Petitioner's ineffectiveness claim based on trial counsel's failure to obtain and examine the laptop. Though Petitioner argued that his initial postconviction counsel was ineffective for failing to adequately present that claim, the court noted that Petitioner's successive petition—like his initial petition—failed "to present anything more than speculation and conjecture" that the computer would contain exculpatory evidence. (*Id.* at 7.) The court of appeals also rejected Petitioner's argument that counsel should have investigated Kathy Grover as a potential witness. The court reasoned that—despite two postconviction petitions—Petitioner had still not submitted anything to support his claims as to Ms. Grover other than his own speculation. (State's Lodging F-3 at 7.)

Finally, the Idaho Court of Appeals considered Petitioner's claim that the Yahoo! Terms of Service Agreement and Yahoo! Registration Page constituted newly discovered evidence under Idaho Code § 19-4901(a)(4) and that this evidence would have allowed Petitioner to claim entrapment. The court analyzed Petitioner's claim under the four-part test for § 19-4901(a)(4) claims: "(1) that the evidence is newly discovered and was

unknown to the defendant at the time of trial; (2) that the evidence is material, not merely

cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that

failure to learn of the evidence was due in no part to lack of diligence on the part of the

defendant." *Whiteley v. State*, 955 P.2d 1102, 1105 (Idaho 1998) (quoting *State v.*

*Drapeau*, 551 P.2d 972, 978 (Idaho 1976)).

The state court assumed, without deciding, that the evidence was newly

discovered, but held that Petitioner's claim failed the second prong of the test because

Petitioner could not show that the evidence was "material and not merely cumulative or

impeaching. (State's Lodging F-3 at 8.) The court further held that the evidence failed the

third prong because Petitioner could not show it would probably produce an acquittal.

(*Id.*) The Idaho Court of Appeals denied all relief.

Petitioner next filed a petition for review with the Idaho Supreme Court. In his

brief in support of the petition, Petitioner presented his claim about the Yahoo! evidence

only as a newly discovered evidence claim under Idaho Code § 19-4901(a)(4). (State's

Lodging F-5 at 5.) He did not rely on any federal grounds for relief, nor did he even cite

*Brady v. Maryland*, in the body of his argument on that claim. (*Id.* at 8-9.) Instead, he

contended that "the district court erred in dismissing [Petitioner's] newly discovered

evidence because the court determined it was not material to the case." (*Id.* at 8)

(capitalization omitted). The Idaho Supreme Court denied the petition for review.

4. **The Federal Petition**

Petitioner filed the instant petition in July 2012. He raises four claims. Claim One asserts that the prosecution violated *Brady* when it failed to disclose, as an expert witness, a detective who testified about the uniqueness of screen names in Yahoo! chat rooms. (Pet., Att. A, Dkt. 1-1 at 1.) Claim Two asserts that the prosecution violated *Brady* by failing to disclose the Yahoo! Terms of Service Agreement, "in which the prosecution's key witness [the detective posing as "lisa200215ncal"] admitted to providing false information to create a Yahoo! profile in order to impersonate himself as a minor." (*Id*. at 2.) Claim Three asserts that the prosecution violated *Brady* by failing to disclose the Micron laptop or to "carry over this key preliminary hearing evidence over to trial." (*Id*. at 4) (capitalization omitted). Claim Four asserts that Petitioner's trial counsel rendered ineffective assistance in violation of the Sixth Amendment by failing "to obtain and examine the laptop computer used to support probable cause at the preliminary hearing after it was not disclosed and carried over to trial." (*Id*. at 6.)

## RESPONDENT'S MOTION FOR
## PARTIAL SUMMARY DISMISSAL

Respondent has moved for summary dismissal of Claims One, Two, and Four, arguing that these three claims are procedurally defaulted.

1. **Standard of Law Governing Summary Dismissal**

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus or claims contained in the petition when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." In such case, the Court construes the facts in a light most favorable to the petitioner.

2. **Standard of Law Governing Procedural Default**

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This means that the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847.

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has *completely failed* to

raise a particular claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; or (3) when the Idaho courts have rejected a claim on an independent and adequate state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To be an "adequate" state ground, a state court's procedural bar must be one that is "'clear, consistently applied, and well-established' at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar is "independent" of federal law if it does not rest on federal grounds and is not intertwined with federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003).

**3.      Claims One, Two, and Four Are Procedurally Defaulted**

    **A.      *Claim One:* Brady *Violation, Expert Witness***

Claim One asserts that the prosecution violated *Brady* by failing to notify the defense that it would be relying on the testimony of a detective with respect to the uniqueness of Yahoo! screen names. Petitioner raised this claim in his initial postconviction petition (State's Lodging C-1 at 13-14), but did not raise it on appeal from the district court's dismissal (State's Lodging D-1). Petitioner also failed to present the claim in his successive postconviction petition. Therefore, Claim One was not properly exhausted. *See O'Sullivan*, 526 U.S. at 847. Further, because it is now too late to raise the

claim in state court, *see* Idaho Code §§ 19-4902 & 19-4908, Claim One is procedurally defaulted. *See Gray*, 518 U.S. at 161-62.

**B.** *Claim Two:* **Brady** *Violation, Yahoo! Evidence*

Petitioner argues in Claim Two that the prosecution violated *Brady* by failing to disclose the existence of the Yahoo! Terms of Service Agreement, which the undercover detective allegedly violated by pretending to be "lisa200215ncal." The law is clear that, for proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim, "*regardless* of whether the petitioner [is] proceeding pro se." *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001). The mere similarity between a state law claim and a federal claim does not constitute fair presentation of the federal claim. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). And general references in state court to broad constitutional principles, such as due process, equal protection, or the right to a fair trial, are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

Petitioner raised a claim regarding the Yahoo! Terms of Service Agreement in his successive postconviction petition, arguing that the Agreement constituted newly discovered evidence and that he was entitled to relief. The district court appeared to treat the claim as a *Brady* claim. (State's Lodging E-1 at 252.) However, when Petitioner appealed the dismissal of this claim, he framed the issue as whether the trial court "abused its discretion when it misconstrued that the newly discovered evidence . . . established a prima facie case of outrageous government conduct which would have

**MEMORANDUM DECISION AND ORDER  17**

enabled [Petitioner] to either strategically present an entrapment defense or offer an entrapment jury instruction at trial." (State's Lodging F-1 at 9.) Such an argument is aimed, not at *Brady*, but at Idaho Code § 19-4901(a)(4) (stating that postconviction relief is available if "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice"); *see also Whiteley*, 955 P.2d at 1105 (Idaho 1998) (setting forth the four-part test applicable to postconviction claims of newly discovered evidence).

Petitioner cited *Brady* with respect to this claim before the state court of appeals, but only as support for the proposition that Petitioner did not know about the evidence at the time of trial. (*Id*. at 30-31.) Petitioner clearly argued the four-prong test applicable to newly discovered evidence claims under Idaho Code § 19-4901(a)(4), and the Idaho Court of Appeals considered the claim in that light. (*Id*. at 28-31; State's Lodging F-3 at 7-8.) Moreover, in his petition for review to the Idaho Supreme Court, Petitioner did not even cite *Brady* in his argument that the newly discovered Yahoo! evidence entitled him to relief. (State's Lodging F-5 at 8-9.)

The United States Supreme Court has held that "ordinarily a state prisoner does not "fairly present" a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 32. In *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003), the Ninth Circuit held that citing to either a federal or a state case analyzing a federal constitutional

**MEMORANDUM DECISION AND ORDER  18**

issue is considered proper presentation of a federal claim. However, in *Casey v. Moore*, 386 F.3d 896, 912 n.13 (9th Cir. 2004), the Ninth Circuit clarified that where "the citation to the state case *has no signal in the text of the brief* that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented." (emphasis added). In *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir.2005), the court further clarified that, "[t]o exhaust his claim, [a petitioner] must have presented his federal, constitutional issue before the [state appellate courts] within the four corners of his appellate briefing."

Applying these precedents to the instant case, the Court concludes that Petitioner did not fairly present Claim Two to the state courts as a federal claim under *Brady v. Maryland*. His passing citation to *Brady* in his appellate brief is not sufficient because the text of Petitioner's argument about the newly discovered Yahoo! evidence did not signal to the state court that he was raising a federal constitutional claim. Further, even if Petitioner's brief to the Idaho Court of Appeals could be construed as making a *Brady* claim, his petition for review did not reference or cite *Brady* at all with respect to the newly discovered evidence claim. Because Petitioner did not fairly present his Yahoo! evidence claim as a federal claim to the highest state court, Claim Two is unexhausted and procedurally defaulted. *See O'Sullivan*, 526 U.S. at 847; *Gray*, 518 U.S. at 161-62; *Baldwin*, 541 U.S. at 32.

## C. *Claim Four: Ineffective Assistance of Trial Counsel*

Petitioner raised his ineffective assistance claim in his initial postconviction petition. (State's Lodging C-1 at 17-19). However, he did not appeal the district court's summary dismissal of this claim. (State's Lodging D-1.) Therefore, Claim Four was not properly exhausted with respect to Petitioner's first postconviction petition. *See O'Sullivan*, 526 U.S. at 847; *Gray*, 518 U.S. at 161-62.

Petitioner attempted to re-assert his ineffectiveness claim in his successive petition for postconviction relief. (State's Lodging E-1 at 39.) However, the state district court held that Petitioner had failed to establish a valid ground for relief, as required by Idaho Code § 19-4908 and Idaho case law, *see Nguyen*, 887 P.2d at 41, because a forensic analysis of the laptop could not have made any difference. (State's Lodging E-1 at 249-52.) The Idaho Court of Appeals applied § 19-4908 and affirmed, stating that the claim was not supported by "anything more than speculation and conjecture as to the testimony of a computer expert witness or Kathy Grover." (State's Lodging F-3 at 7.)

The Idaho Court of Appeals applied an adequate and independent state procedural bar when it affirmed the district court's dismissal of Petitioner's ineffective assistance of trial counsel claim. Petitioner does not claim that Idaho Code § 19-4908 is not consistently applied or was not well-established. *See Martinez v. Klauser*, 266 F.3d at 1093-94. Therefore, Claim Four is procedurally defaulted.

**4.      Cause and Prejudice**

Because Claims One, Two, and Four are procedurally defaulted, the Court cannot hear the merits of these claims unless Petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default; or (2) a showing that a miscarriage of justice will occur if the claim is not heard because Petitioner probably is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 329 (1995); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982). This cause cause and prejudice test was clarified in *Coleman*, 501 U.S. at 745, as a basis for excusing procedural default.

**A.      *Traditional, or* Coleman*, Cause and Prejudice***

Petitioner does not argue that Claims One, Two, or Four are excused from procedural default on the basis of cause and prejudice. (Dkt. 9.) In fact, Petitioner does

not address Claims One or Two at all in his response to the Motion for Partial Summary Dismissal. He argues with respect to Claim Four that the Idaho Court of Appeals unreasonably applied § 19-4908 when it determined that postconviction counsel's performance did not constitute sufficient reason to allow Petitioner to raise that claim in his successive petition. (*Id*. at 4-6.)

However, the Court cannot second-guess a state court's application of an adequate and independent procedural bar such as § 19-4908. *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) ("Federal habeas courts lack jurisdiction . . . to review state court applications of state procedural rules."). Therefore, Petitioner has not shown cause under *Coleman* to excuse the procedural default of Claim Four.

Although Petitioner challenges the state court's application of § 19-4908—an issue outside the scope of federal habeas review—the crux of Petitioner's argument is that his postconviction counsel failed to adequately present and support Petitioner's claim of ineffective assistance of trial counsel in the initial postconviction petition. Substantively, this argument implicates recent changes to the traditional cause and prejudice analysis, as explained by the United States Supreme Court in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S.Ct. 1911 (2013). Liberally construing Petitioner's allegations as asserting cause under *Martinez*, the Court will consider whether Petitioner has established cause for the procedural default of Claim Four.

### B. Martinez/Trevino *Cause and Prejudice*

#### i. Standards of Law

A petitioner does not have a federal constitutional right to effective assistance of counsel during state postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the general rule is that any errors of counsel during the postconviction action cannot serve as a basis for cause to excuse a petitioner's procedural default of his claims. *See Coleman*, 501 U.S. at 752.

*Martinez* established a limited exception to this general rule and held that inadequate assistance of postconviction review (PCR) counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."[6] 132 S. Ct. at 1315.

The *Martinez* exception[7] applies only to the ineffectiveness of PCR counsel in the initial postconviction review proceeding. It "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." *Id.* at 1320. Rather, the *Martinez* Court was singularly

---

[6] Petitioner raises a claim of ineffective assistance of *trial* counsel only. *See Nguyen v. Curry*, ___ F.3d ___, 2013 WL 6246285, *6-8 (9th Cir. Dec. 4, 2013) (holding that *Martinez* can apply to excuse the procedural default of claims of ineffective assistance of *appellate* counsel).

[7] *Martinez* applies only if the ineffective assistance of trial counsel claim is exhausted (no further avenue of state court relief is available) and procedurally defaulted (an adequate and independent state procedural ground for the default exists). If the new claim is unexhausted and not procedurally defaulted, then the petitioner may be able to return to state court to assert the claim under the stay-and-abey procedure. *See Rhines v. Weber*, 544 U.S. 269 (2005).

concerned that, if ineffective assistance of counsel (IAC) claims were not brought in the collateral proceeding which provided the first occasion to raise such claims, the effect was that the claims could not be brought *at all. See* 132 S. Ct. at 1316. Therefore, a petitioner may not use as cause attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." 132 S. Ct. at 3120.

In *Trevino*, 133 S.Ct. 1911 (2013), the Supreme Court described the *Martinez* test as consisting of four requirements or prongs:

> We consequently read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

133 S. Ct. at 1918 (citing *Martinez*, 132 S. Ct. at 1318-19, 1320-21) (alterations in original).

Thus, as a necessary first prong for the *Martinez* exception to apply, a petitioner must bring forward some facts demonstrating that his underlying IAC claim is substantial. The United States Supreme Court has defined "substantial" as a claim that "has some merit." *Martinez*, 132 S. Ct. at 1318 (comparing the standard for certificates of

**MEMORANDUM DECISION AND ORDER  24**

appealability from *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). Stated inversely, a claim

is "*in*substantial" if "it does not have any merit or . . . is wholly without factual support."

*Id.* at 1319.

Determining whether an IAC claim is substantial requires a federal district court to

examine the claim under *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner

asserting ineffective assistance of counsel must show that (1) "counsel made errors so

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

Sixth Amendment," and (2) those errors "deprive[d] the defendant of a fair trial, a trial

whose result is reliable." *Id.* at 687.

Whether an attorney's performance was deficient is judged against an objective

standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the

"reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be
> highly deferential. It is all too tempting for a defendant to
> second-guess counsel's assistance after conviction or adverse
> sentence, and it is all too easy for a court, examining
> counsel's defense after it has proved unsuccessful, to
> conclude that a particular act or omission of counsel was
> unreasonable. A fair assessment of attorney performance
> requires that every effort be made to eliminate the distorting
> effects of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct
> from counsel's perspective at the time. Because of the
> difficulties inherent in making the evaluation, a court must
> indulge a strong presumption that counsel's conduct falls
> within the wide range of reasonable professional assistance;
> that is, the defendant must overcome the presumption that,
> under the circumstances, the challenged action might be
> considered sound trial strategy. There are countless ways to

> provide effective assistance in any given case. Even the best
> criminal defense attorneys would not defend a particular
> client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of which evidence to present or which witnesses to call, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a particular theory or issue in the case is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation
> are reasonable precisely to the extent that reasonable
> professional judgments support the limitations on
> investigation. In other words, counsel has a duty to make
> reasonable investigations or to make a reasonable decision
> that makes particular investigations unnecessary. In any
> ineffectiveness case, a particular decision not to investigate
> must be directly assessed for reasonableness in all the
> circumstances, applying a heavy measure of deference to
> counsel's judgments.

*Id.* at 690-91.

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. As the *Strickland* Court instructed:

**MEMORANDUM DECISION AND ORDER  26**

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96.

These standards from *Strickland* for determining deficient performance and prejudice, are, of course, the standards for an eventual review of the merits of the IAC claim. The first *Martinez* prong is not the same as a merits review; rather, it is more akin to a preliminary review of a *Strickland* claim for purposes of determining whether a certificate of appealability should issue. *See Martinez*, 132 S.Ct. at 1318-19. Therefore, a court may conclude that a claim is substantial when a petitioner has shown that "resolution" of the merits of the *Strickland* claim would be "debatable amongst jurists of reason" or that the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted). Thus, the first prong of *Martinez* requires the district court to *review* but not *determine* whether trial counsel's acts or omissions resulted in deficient performance and in a reasonable

probability of prejudice, and to *determine* only whether resolution of the merits of the claim would be debatable among jurists of reason and whether the issues are deserving enough to encourage further pursuit of them.

A second necessary prong of *Martinez* is a showing that the petitioner had no counsel on initial PCR review, or that PCR counsel was "ineffective under the standards of *Strickland*." 132 S. Ct. at 1318; *see Trevino*, 133 S. Ct. at 1918. "Ineffectiveness" is a term defined by *Strickland* as deficient performance and a reasonable probability of prejudice caused by the deficient performance. 466 U.S. at 694, 700.

As to deficient performance, not just any error or omission of PCR counsel will be deemed "deficient performance" that will satisfy *Martinez*; if the PCR "attorney in the initial-review collateral proceeding did not perform below constitutional standards," the PCR attorney's performance does not constitute "cause." 132 S. Ct. at 1319. The *Strickland* standards for analyzing deficient performance set forth above apply with equal force to PCR counsel in the context of a *Martinez* argument.

As to prejudice, in *Detrich v. Ryan*, ___ F.3d ___, 2013 WL 4712729, *6 (9th Cir. 2013) (en banc) (plurality opinion), a plurality of judges concluded: "A prisoner need not show actual prejudice resulting from his PCR counsel's deficient performance, over and above his required showing that the trial-counsel IAC claim be 'substantial' under the first *Martinez* requirement." Those judges reasoned:

> If a prisoner who had PCR counsel were required to show prejudice, in the ordinary *Strickland* sense, resulting from his PCR counsel's deficient performance in order to

**MEMORANDUM DECISION AND ORDER  28**

satisfy the second *Martinez* requirement, the prisoner would have to show, as a condition for excusing his procedural default of a claim, that he would succeed on the merits of that same claim. But if a prisoner were required to show that the defaulted trial-counsel IAC claims fully satisfied Strickland in order to satisfy the second *Martinez* requirement, this would render superfluous the first *Martinez* requirement of showing that the underlying *Strickland* claims were "substantial"—that is, that they merely had "some merit." *See Martinez*, 132 S.Ct. at 1318-19.

*Id.*

ii.   Application of *Martinez* to Claim Four of the Petition

Because the *Martinez* exception applies only to ineffective assistance of counsel claims, the only defaulted claim to which it might apply is Claim Four. After a thorough review of the record, the Court concludes that Petitioner is unable to show that Claim Four is substantial.[8]

Petitioner contends that trial counsel performed deficiently based on the following reasoning: if trial counsel had obtained the Micron laptop prior to trial, an examination of

---

[8] The Court has conducted an independent analysis of *Martinez* cause and prejudice and determined that Petitioner's IAC claim is not excused from procedural default based on ineffectiveness of PCR counsel. Therefore, the Court need not address the latent issue of whether the Idaho Court of Appeals' decision—that Petitioner had not shown that his PCR counsel was ineffective for purposes of whether "sufficient reason" existed to excuse the waiver of claims and to allow a successive petition pursuant to Idaho Code § 19-4908—might be binding on this Court's *Martinez* analysis under issue preclusion, or collateral estoppel, principles. *See Wige v. City of Los Angeles*, 713 F.3d 1183, 1185 (9th Cir. 2013) ("Federal courts must give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.") (internal quotation marks omitted); *Berkshire Inv., LLC v. Taylor*, 278 P.3d 943, 951 (Idaho 2012) ("Collateral estoppel bars relitigation of an issue previously determined when: (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.")

that laptop would have revealed no evidence of the chat or use of the screen name "letsgetkinky831." He further contends that Kathy Grover, the wife of his employer at the time, would have testified that Petitioner was working on the very same laptop at the time the chat was taking place. Taken together, Petitioner claims, this would have proved that he could not have been the person enticing "lisa200215ncal."

However, Petitioner's two necessary premises—that the laptop would have shown no evidence of the chat and that Ms. Grover would have testified as Petitioner suggests—are "wholly without factual support." *Martinez*, 132 S. Ct. at 1319. It is mere speculation that the laptop contained no incriminating evidence. Petitioner claims that, because an investigator testified at the preliminary hearing that Petitioner's Micron laptop contained evidence of use of the "letsgetkinky831" screen name, the only reason the prosecution would decline to introduce the laptop at trial was if the investigator had lied and there was actually no evidence of the screen name on the computer. (Pet. at 4-7.) Thus, Petitioner asserts, "any competent attorney would investigate why [the state] would not use this ironclad evidence at trail [sic]." (*Id*. at 7.) But there could be any number of reasons why the prosecution would choose to present certain evidence or to present its evidence in a certain way. For example, the prosecutor may have believed the computer evidence to be unnecessary because of the overwhelming nature of the rest of the evidence, as well as potentially confusing to the jury.

Moreover, Petitioner has not brought forth any evidence that Ms. Grover would have testified, either at trial or during the initial postconviction proceedings, that

Petitioner was working on the Micron laptop at the time of the chat. As the Idaho Court of Appeals noted, despite alleging that his initial PCR counsel was ineffective in failing to provide any evidence to support his IAC claim, Petitioner continued to rely solely on his own speculation in his successive postconviction proceedings. Petitioner has never come forward with an affidavit from Ms. Grover. Indeed, there is nothing in the record regarding Ms. Grover's potential testimony except Petitioner's self-serving statement, which is insufficient to establish that his trial counsel performed deficiently by failing to secure her as a witness. Petitioner does not have a substantial claim that trial counsel's actions constituted deficient performance.

Further, Petitioner has not shown a substantial claim that he was prejudiced as a result of trial counsel's alleged errors. At trial, the prosecution did not claim that Petitioner used the Micron laptop to entice someone he believed to be a 15-year-old girl. Indeed, the state did not rely on any computer evidence at all. The jury convicted Petitioner notwithstanding the absence of such evidence. Thus, even if counsel had presented the laptop computer at trial, and even if did not contain evidence of the chat, there is still no reasonable probability that the jury's verdict would have been different, particularly given all of the evidence of Petitioner's guilt. Defense counsel would have had to overcome the fact that Petitioner arrived at a particular address—a vacant apartment used only for an Internet sting operation—23 minutes after "letsgetkinky831" told "lisa200215ncal" he was coming to that address. Petitioner offers no alternative explanation why he would have been visiting a vacant apartment. Counsel would also

**MEMORANDUM DECISION AND ORDER  31**

have had to overcome the fact that Petitioner knocked on the door to that apartment shortly after a small, 2-door black car turned into the parking lot—the same type of car described by "letsgetkinky831." There is no merit in Petitioner's argument that the laptop could have altered the outcome of his trial.

For the foregoing reasons, *Martinez* does not excuse the default of Petitioner's IAC claim because that claim is not substantial.

5.     **Actual Innocence**

If a petitioner cannot show cause and prejudice for his procedural default, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice," which means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496. To satisfy this standard, a petitioner must make a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993).

If a petitioner brings forward new evidence not presented at trial which tends to show his innocence, the Court must then determine whether, "in light of the new evidence, no juror, acting reasonably, would have voted to find [the defendant] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. at 329. Types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d

348, 350-51 (8th Cir. 1996).

Petitioner has not brought forth any evidence to support a claim of actual innocence. Thus, Claims One, Two, and Four are not excused from procedural default on that basis.

## CONCLUSION

Claims One, Two, and Four of the Petition are procedurally defaulted. Petitioner has not shown cause and prejudice, or actual innocence, to excuse that default. Therefore, these claims must be dismissed.

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Partial Summary Dismissal (Dkt. 6) is GRANTED. Claims One, Two, and Four of the Petition are DISMISSED with prejudice.

2. Respondent shall file an Answer to the only remaining claim (Claim Three) **within 90 days** after entry of this Order. The answer should also contain a brief setting forth the factual and legal basis of grounds for dismissal and/or denial of the remaining claim. Petitioner shall file a reply (formerly called a traverse), containing a brief rebutting Respondent's answer and brief, which shall be filed and served **within 30 days** after service of the answer.

   Respondent has the option of filing a sur-reply **within 14 days** after service

of the reply. At that point, the case shall be deemed ready for a final decision.

3.      No party shall file supplemental responses, replies, affidavits or other documents not expressly authorized by the Local Rules without first obtaining leave of Court.

4.      No discovery shall be undertaken in this matter unless a party obtains prior leave of Court, pursuant to Rule 6 of the Rules Governing Section 2254 Cases.

DATED:  December 30, 2013

Honorable Edward J. Lodge
U. S. District Judge